UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NORBERTO MARTINEZ,

                           Petitioner,

          -against-

UNITED STATES OF AMERICA,

                           Respondent.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**09-CV-03692 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Norberto Martinez ("Martinez") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (See Petition (Docket Entry # 1).) Martinez is currently serving a sentence of life imprisonment following his conviction for possession with intent to distribute heroin under 21 U.S.C. § 841(b)(1)(A), importation of heroin under 21 U.S.C. § 960(b)(1)(A), conspiracy to possess with intent to distribute heroin under 21 U.S.C. § 846, conspiracy to import heroin under 21 U.S.C. § 963, and possession of a firearm in furtherance of a drug trafficking crime under 21 U.S.C. § 924(c). (See Mem. in Support (Docket Entry # 2) at 1.) Martinez claims that he was denied his constitutional right to the effective assistance of trial counsel. (See Petition at 4.) For the following reasons, the Petition is denied.

**I.    BACKGROUND**

    **A.    Arrest and Pretrial Proceedings**

On January 15, 2003, federal agents arrested several of Martinez's alleged co-conspirators, including Carlos Rivera ("Rivera") and James Solorzano ("Solorzano"). (Mem in Opp. (Docket Entry # 8) at 7-8.) Following his arrest, Solorzano provided the Government with information that eventually led to Martinez's arrest in October of 2003. (Id. at 8.)

1

While Martinez was preparing for trial, he hired an investigator to speak to Jesus Mojica ("Mojica"), an inmate in federal prison, who claimed to have information about Rivera. (Mem. in Support at 40.) Mojica relayed to the investigator that Rivera had told him that Solorzano had encouraged Rivera to cooperate with the Government, and that Solorzano promised to pay Rivera's mother $100,000 if Rivera agreed to do so. (Id.) At trial, defense counsel Linda George ("George") moved to admit Mojica's statement as evidence. (Id.) The court denied the motion, holding that the statement was inadmissible hearsay. (Id.)

On March 31, 2005, the Government moved pursuant to Federal Rule of Evidence 404(b) to introduce evidence that Martinez was convicted of importing and distributing heroin in 1995 and that, while Martinez was serving his sentence for that conviction, he met Solorzano in prison. (Mem in Opp. Ex. A.) The court denied the Government's motion, but indicated that the Government could renew the motion after the commencement of trial if Martinez asserted lack of knowledge or intent as a defense. (Mem. in Opp. Ex. D.)

### B. Trial and Post-Trial Proceedings

At trial, the Government presented testimony from four of Martinez's co-conspirators who had pleaded guilty to conspiracy charges and entered into cooperation agreements with the Government. (Mem. in Opp. at 4.) All four testified that Martinez was the leader and organizer of the conspiracy to import and distribute heroin. (Id.) The Government also introduced evidence recovered from Martinez's home, including $500,000 recovered from a hidden compartment in his basement, notebooks relating to heroin distribution, a cell phone containing a stored number used by a heroin supplier, and forged tax documents and other false financial information that Martinez had provided to his federal probation officer. (Id. at 9.) The Government also introduced evidence recovered from Martinez's brother's home, including a

2

lease for a stash house where the police recovered $100,000 in cash, five guns, and a computer disk containing documents related to the narcotics conspiracy. (Id.)

During her opening statement, George introduced the theory that the true leader of the conspiracy was Solorzano, not Martinez. (Id. at 18.) She stated, "this case is about the Solorzano organization. . . . Because it was the Solorzano organization and because Solorzano was caught, a second time around, he became desperate, the evidence will show, and he did whatever he could do to shift responsibility to [Martinez] – to his benefit." (Id. at 19.) During her cross-examination of Solorzano, George elicited testimony that Solorzano had previously been convicted of importing cocaine from Colombia. (Id. at 20.) At the conclusion of Solorzano's cross-examination, the Government renewed its application to introduce evidence of Martinez's prior conviction and evidence that Solorzano and Martinez met in prison following that conviction. The court granted the motion, holding:

> According to the defendant's theory of the case, it was Solorzano who possessed the contacts and experience to run a sophisticated drug operation in which the defendant was an underling. The fact that the defendant was involved in heroin distribution prior to his involvement with Solorzano rebuts the defense's theory that Solorzano was the mastermind of the instant distribution operation because the defendant's past heroin distribution activities involved many of the same individuals as the current conspiracy, individuals that Solorzano did not know until becoming involved with the instant conspiracy. Because the defense has asserted that Solorzano was the chief architect of the present conspiracy, the government may rebut this theory by introducing evidence that Solorzano was recruited by the defendant into a drug distribution operation similar to that which the defendant was involved with prior to his incarceration. . . . Because evidence of the defendant's past acts may be now admitted, there is no basis to limit evidence of Martinez's incarceration with Solorzano.

(Mem. in Opp. Ex. E).

The jury found Martinez guilty on all counts. (Mem. in Opp. at 3.) Martinez subsequently appealed to the Second Circuit on a number of substantive grounds, but he did not

3

present a claim of ineffective assistance of counsel. (Id. at 12.) The Second Circuit denied his appeal on May 27, 2008. United States v. Vargas, 279 Fed. App'x 56, 63 (2d Cir. 2008). Martinez filed the instant petition on August 25, 2009. Martinez claims that George was ineffective because she "opened the door to . . . evidence of [Martinez] having been previously convicted of heroin conspiracy." (Mem. in Support at 6.) He also claims that he is entitled to a new trial because George failed to interview a witness who could have provided exculpatory testimony, and because she failed to identify whether Martinez's former attorney provided information to Solorzano. (Id. at 40, 43.)

## II. DISCUSSION

Under 28 U.S.C. § 2255, a court may "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." However, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b).

### A. Ineffective Assistance of Counsel

To prevail on an ineffective assistance claim, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and "that the deficient performance prejudiced the [petitioner]." Strickland v. Washington, 466 U.S. 668, 697 (1984). The first prong of the Strickland test "requires [a] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." Id. at 687. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct." Id. at 689 (internal citations omitted). "Judicial scrutiny of

4

counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

Strickland's second prong requires that a defendant show actual prejudice. To show actual prejudice, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. An insufficient showing on either prong defeats an ineffective assistance claim. See id. at 697.

### B. Elicitation of Harmful Evidence

Martinez asserts that George was ineffective because her opening statement and questioning of Solorzano led the court to admit otherwise inadmissible evidence of Martinez's 1995 conviction and incarceration for importing and distributing heroin. (Petition at 6.) Martinez contends that George should have limited her trial strategy to pointing out that the Government failed to corroborate the cooperating witnesses' statements instead of asserting that Solarzano, not Martinez, led the conspiracy. (Id.) Although George's strategy ultimately failed – i.e., Martinez was convicted – George's representation was not objectively unreasonable.

"[A]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." Mason v. Scully, 16 F.3d 38, 42 (2d Cir. 1994) (internal quotations omitted). "The question is not whether some other [strategy] would have been more successful. That can always be argued after a case has been lost. The question is whether counsel's conduct of the defense was a reasonable course at the time and came within the standards for acceptable representation." United States v. Aguirre, 912 F.2d 555, 563 (2d Cir. 1990). It was reasonable strategy for George to challenge the Government's case by attempting

to shift blame onto Solorzano, even if George's questions ultimately elicited the admission of harmful evidence. See Greene v. Walker, No. 98-CV-2149, 1999 U.S. App. LEXIS 34436, at *2 (2d Cir. Dec. 29, 1999) ("That [counsel's] strategy . . . opened the door to damaging evidence does not support a finding that counsel acted unreasonably or outside the scope of professional norms.")

### C. Failure to Investigate Exculpatory Witness

Martinez next alleges that George was ineffective because she failed to secure the testimony of Rivera, a purportedly exculpatory witness. (Mem. in Support at 40.) "Counsel's decision as to whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation." United States v. Best, 219 F.3d 192, 201-202 (2d Cir. 2000). Because Rivera was one of Martinez's alleged co-conspirators, he could have revealed damaging information on cross-examination. George could have reasonably decided that calling Rivera as a witness was too risky to justify the possible benefits. Consequently, George's decision not to call Rivera as a witness does not constitute ineffective assistance under the first Strickland prong.

### D. Martinez Was Not Meaningfully Prejudiced

Even assuming that George was ineffective in opening the door to evidence of Martinez's 1995 conviction or in deciding not to call Rivera, there is no reasonable probability that these errors affected the outcome of the proceeding. The Government's case was not based on Martinez's previous conviction, but on the testimony of multiple cooperating witnesses who testified as to Martinez's role in the charged heroin conspiracy. See United States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008) (no prejudice where multiple cooperating witnesses linked defendant directly to crime). There was also substantial circumstantial evidence against

6

Martinez, including the $500,000 in cash hidden in his house along with along with notebooks related to heroin distribution, phony tax documents, and other false financial information. The evidence of Martinez's guilt presented by the Government was so overwhelming that the attorney errors claimed by Martinez would not have affected the trial's outcome. See United States v. Hasan, 586 F.3d 161, 170 (2d Cir. 2009) (overwhelming evidence precluded finding of prejudice).

### E. Failure to Prove that Prior Attorney Revealed Privileged Information

Martinez's final claim is that George failed to identify information that may have been communicated to Solorzano by Barry Schulman ("Schulman"), an attorney who represented Martinez when he was convicted in 1995 and who also represented Solorzano during one proffer session. (Id. at 43.) Martinez argues that Schulman "might have revealed confidential information arising out of his previous representation of Petitioner." (Id.) Martinez does not identify any specific information that Schulman could have revealed to Solorzano or how it may have harmed him at trial. As a result, he has not shown that he was prejudiced by George's alleged error. This claim therefore also fails under the second Strickland prong. Strickland, 466 U.S. at 697.

## III. CONCLUSION

For the foregoing reasons, Martinez's Petition is DENIED. Because Martinez has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2); Lozada v. United States, 107 F.3d 1011 (2d Cir. 1997).

SO ORDERED.                                                s/Nicholas G. Garaufis

Dated: Brooklyn, New York                                  /NICHOLAS G. GARAUFIS
December 17, 2010                                          United States District Judge

7